UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK McQUEEN, GAIL RUSSELL, MICHELLE SHUMAKER, and SHARON DANCY, ) ) ) Plaintiffs, ) ) vs. ) ) CITY OF CHICAGO, a municipal corporation, JAMES ) A. MAURER, JOSEPH O'CONNER, BILL ) LONERGRAN, MICHAEL FITZGERALD, ) RAYMOND JUBERA, and LOUIS MILLS, in their ) individual and official capacities, ) ) Defendants. ) | 09 C 2048 Judge Feinerman |

## Memorandum Opinion and Order

Plaintiffs Patrick McQueen, Gail Russell, Michelle Shumaker, and Sharon Dancy,

aviation police officers employed by the City of Chicago's Department of Aviation ("DOA"),

brought suit against several current and former DOA supervisors and the City of Chicago.

Plaintiffs' second amended complaint (Doc. 71) alleges the denial of equal employment

opportunities under 42 U.S.C. § 1981; violations of their Fourteenth Amendment rights to equal

protection and due process; and violations of the Family and Medical Leave Act, 29 U.S.C. §

2601 *et seq*. ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the

Americans with Disabilities Act, 42 U.S.C. §12111 *et seq*. ("ADA"), the Illinois Human Rights

Act, 775 ILCS 5/1 *et seq*. ("IHRA"), and the Illinois Civil Rights Act, 740 ILCS 23/1 *et seq*.

("ICRA"). The individual Defendants are James Maurer, former Managing Deputy

Commissioner of Security and Public Safety for the DOA; Joseph O'Conner and Bill Lonergran,

both Assistants to the Deputy Commissioner for Security and Public Safety; and Michael Fitzgerald, Raymond Jubera, and Louis Mills, all Lieutenants with the DOA. All Defendants have moved under Rule 12(b)(6) for partial dismissal of the second amended complaint. Defendant Maurer's motion (Doc. 111), which is directed only against Counts I-V, is denied. The motion filed by the remaining Defendants (Doc. 96) is granted in part and denied in part.

### Background

The facts alleged in a complaint are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). According to the second amended complaint, the DOA is a "lawless" organization that allows non-African-American aviation police officers to breach airport security, to show up to work drunk, and to run personal errands while on duty. By contrast, Plaintiffs, who are African-American, have been disciplined for a series of fabricated or protected activities, assigned to undesirable job assignments, subjected to petty harassment, and denied promotional opportunities. To summarize:

Plaintiff Dancy alleges race and sex discrimination. She was suspended for five days in retaliation for filing discrimination and retaliation charges with the Illinois Department of Human Rights ("IDHR") in December 2007; was reprimanded for apprehending a City of Chicago employee who was stealing luggage from O'Hare Airport; was passed over for promotion and denied training opportunities for discriminatory and retaliatory reasons; and was reassigned from a permanent post to a less desirable assignment because of her race and because she had filed a second charge of discrimination with the IDHR.

Plaintiff Russell, too, alleges race and sex discrimination. She was denied lunch breaks, was suspended for three days for being disrespectful to her supervisors, and was banned from using DOA vehicles. In addition, after she refused to write a memorandum to Fitzgerald

explaining why she and a non-African-American employee had lunch together, Maurer "angrily exclaimed that if [the memorandum] was not provided, 'I'm gonna come after them—I'm gonna show them what harassment and retaliation is.'"  Doc. 71, ¶ 101.  When given favorable job assignments, Russell was harassed and required to respond to every security incident.  On October 2, 2009, for example, Russell radioed for assistance but an African-American Sergeant refused to send officers to her aid.

Plaintiff McQueen alleges race and disability discrimination.  McQueen, who suffers from a respiratory condition and who has been approved for intermittent FMLA leave since 2007, was disciplined for taking FMLA leave in August 2008 and February 2009, and was penalized in April 2009 for leaving work after the airport's air quality began to affect his health.  A July 2008 request to accommodate McQueen was not granted until November 2009, and only occasionally complied with thereafter.  When McQueen again requested accommodations in 2009, Mills told him that he would never be assigned to job assignments with better air quality; Fitzgerald had told him that "the FMLA doesn't apply" to the DOA.  *Id.* ¶ 156.  In March 2010, Defendants initiated disciplinary proceedings against McQueen for "loafing" and "incompetence" after he failed to respond to DOA radio calls.  McQueen failed to respond to the calls because he was in a "radio dead zone," and McQueen alleges that the disciplinary proceedings were instituted because of his race.

Plaintiff Shumaker alleges race, sex, and disability discrimination.  Defendants failed to investigate an incident in which Shumaker was subjected to racial epithets by a non-DOA employee.  Maurer and Fitzgerald did not allow Shumaker to return to work between November 2007 and January 2008 because she had taken FMLA leave.  On November 13, 2008, Shumaker was suspended by her supervisor—who was acting at the direction of Maurer and

Fitzgerald—for leaving her work area.  Shumaker actually was not outside the perimeter and, even if she were, non-African Americans were allowed to engage in similar actions without penalty; in fact, Shumaker was retaliated against for reporting non-African Americans who left their patrol areas.

Fitzgerald subsequently banned Shumaker from using DOA vehicles until she "admit[ted] guilt" for her transgressions.  Doc. 71, ¶ 98.  Shumaker then was denied transportation to her security assignment by DOA employees acting at Fitzgerald's direction. When Shumaker complained to Jubera, he refused to let her file a report with the DOA's Human Resources department.  On January 5, 2009, Shumaker reported these incidents to Maurer, attributing them to sex discrimination.  On January 15, 2009, Shumaker was accused of permitting a breach of airport security.  The accusation, which resulted in disciplinary proceedings that later were dropped, was false and may have been a result of her complaints to Maurer.  Although the accusation's sole basis was video surveillance, Shumaker never was permitted to view the videos in order to contest the charges.

The non-disclosure of the video came on the heels of other efforts to conceal and alter evidence of discrimination.  On May 1, 2008, Fitzgerald ordered that all personnel records be concealed and withheld from employees who filed charges against the DOA.  In an email to DOA supervisors, Fitzgerald stated that "if an officer requests this information he/she is to be told they need a subpoena or a formal request from their Union.  I have gone to several EEOC complaints and the officers are producing these items and they are working against the department."  Doc. 71, ¶ 72.  To this end, on March 16, 2009, Maurer and the other Defendants interfered with an investigation of the DOA conducted by the City's Inspector General.  Maurer did so by issuing a memorandum that required all employees to speak with their supervisors if

contacted by the Inspector General's office. Supervisors then were required to notify O'Connor or Lonergran about the contacts.

Together, Plaintiffs allege that "[t]he Administrative Lieutenant and Defendants Maurer, Lonergran, or O'Connor were or are involved in the decision-making process for every disciplinary action against an Aviation Police Officer." Doc. 71, ¶ 36. To avoid the appearance of discrimination, those Defendants forced African-American supervisors to sign Plaintiffs' disciplinary paperwork. In addition, the DOA denied Plaintiffs promotional opportunities while promoting non-African Americans, in part because of personal relationships and in part because of a desire to give non-African Americans higher compensation. The City's practice of not promoting employees with a recent history of discipline, finally, allegedly deprived African Americans of the ability to advance.

Plaintiffs filed this action on April 2, 2009. An amended complaint was filed on August 3, 2009, and a second amended complaint, the subject of the present motions, was filed on April 27, 2010. It advances twenty-six counts: (1) race discrimination by all Defendants against all Plaintiffs in violation of § 1981; (2) retaliation by all Defendants against all Plaintiffs in violation of § 1981; (3) interference by the City, Maurer, and Fitzgerald of McQueen's and Shumaker's FMLA rights; (4) retaliation by the City, Maurer, and Fitzgerald against McQueen and Shumaker in violation of the FMLA; (5) deprivation by all Defendants of all Plaintiffs' rights under the equal protection and/or due process clause of the Fourteenth Amendment and/or § 1981; (6) discrimination by the City against Dancy in violation of Title VII; (7) retaliation by the City against Dancy in violation of Title VII; (8) discrimination by the City against Dancy in violation of the IHRA; (9) retaliation by the City against Dancy in violation of the IHRA; (10) discrimination by the City against McQueen in violation of Title VII; (11) retaliation by the City

against McQueen in violation of Title VII; (12) discrimination against and failure to accommodate McQueen by the City in violation of the ADA; (13) retaliation by the City against McQueen in violation of the ADA; (14) discrimination by the City against McQueen in violation of the IHRA; (15) discrimination against and failure to accommodate McQueen by the City in violation of the IHRA; (16) retaliation by the City against McQueen in violation of the IHRA; (17) unintentional discrimination (disparate impact) by the City against all Plaintiffs in violation of Title VII; (18) unintentional discrimination (disparate impact) by the City against all Plaintiffs in violation of the IHRA; (19) discrimination by the City against Shumaker in violation of Title VII; (20) retaliation by the City against Shumaker in violation of Title VII; (21) discrimination by the City against Shumaker in violation of the IHRA; (22) retaliation by the City against Shumaker in violation of the IHRA; (23) discrimination by the City against Russell in violation of Title VII; (24) discrimination by the City against Russell in violation of the IHRA; (25) discrimination by the City against all Plaintiffs in violation of the ICRA; and (26) a claim under the Illinois Tort Immunity Act, 745 ILCS 10/9-102, requiring the City to indemnify the individual Defendants for any liability they incur.

Plaintiffs seek a declaratory judgment that Defendants violated § 1981, the FMLA, Title VII, the IHRA, the ICRA, and the equal protection and due process clauses. They also seek injunctive relief to expunge all unwarranted discipline from their records, to obtain full seniority and benefits, to institute training programs for all DOA managers, to forbid future violations of the law, to require Defendants to adopt policies for effective reporting and investigation of discrimination, and to require the City of Chicago to indemnify all individual Defendants. Finally, Plaintiffs seek past and future wages, compensatory damages, liquidated damages, punitive damages, costs, and attorney fees.

**Discussion**

Defendants move to dismiss all counts, in whole or in part, with the exception of Counts XII, XIII, and XXVI.  To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and internal quotation marks omitted).  Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted).

**A.     Section 1981 Claims**

Defendants move to dismiss the § 1981 claims (Counts I and II) on the ground that they are brought directly under § 1981 rather than through § 1983.  In *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989), the Supreme Court held that § 1983 provides the exclusive remedy for alleged § 1981 violations by state actors.  Whether this holding survived the Civil Rights Act of 1991 is an open question, one not yet addressed by the Seventh Circuit. *See Ortiz v. City of New York*, __ F. Supp. 2d __, 2010 WL 5116129, at *2 (E.D.N.Y. Dec. 13, 2010) (collecting cases); *Simmons v. Chicago Bd. of Educ.*, 2000 WL 1720958, at *6 (N.D. Ill. Nov. 16, 2000) (collecting cases).  The question need not be addressed in this case, at least at the pleading stage.

Plaintiffs in federal court are not required to plead legal theories.  *See McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 428 (7th Cir. 2005) ("The real question [is] whether relief

[is] possible based on any legal theory … under any set of facts that could be established consistent with the allegations."); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations. … [T]he Complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").  "Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." *Hatmaker v. Mem. Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  The only apparently material difference between § 1981 and § 1983 is that some § 1981 claims have a four-year statute of limitations while § 1983 claims filed in Illinois have a two-year limitations period.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382-85 (2004); *Oliver v. Dunn Co.*, 2009 WL 1155580, at *3 (C.D. Ill. Apr. 7, 2009); *Yaodi Hu v. City of Chicago*, 2009 WL 635522, at *5 (N.D. Ill. Mar. 12, 2009).  If some or all of the alleged misconduct underlying Counts I and II occurred outside the § 1983 limitations period but not the § 1981 limitations period, Defendants may press this issue at summary judgment.

### B.  Defendants' Personal Involvement

Maurer contends that Counts III and IV fail to adequately allege his personal involvement in the claimed FMLA violations against McQueen and Shumaker.  However, the second amended complaint alleges that Maurer participated in the decisions to discipline McQueen for using or seeking to use FMLA leave, Doc. 71, ¶ 156; directed that Shumaker not be allowed to return to work for nearly three months after she exercised her FMLA rights, *id.*, ¶ 157; and assigned McQueen to posts with the lowest air quality in an effort to exacerbate the

medical conditions necessitating McQueen's FMLA leave, *id.*, ¶ 165. These allegations sufficiently tie Maurer personally to the claimed FMLA violations. *See Rippee v. WCA Waste Corp.*, 2010 WL 816625, at *3 (W.D. Mo. Mar. 4, 2010). Maurer does not contend that employees of public agencies cannot be held personally liable under the FMLA, *compare Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003) ("the FMLA's individual liability provision does not extend to public agencies") *with Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (expressly disagreeing with Sixth Circuit), so that issue need not be addressed here.

Along similar lines, Maurer, Lonergran, and O'Connor contend that Counts I, II, and V, which purport to state §§ 1981 and 1983 claims, fail to adequately allege their personal involvement in the relevant misconduct. Individual liability arises under §§ 1981 or 1983 only if the defendant was personally involved. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). A defendant may be personally liable if he "acquiesced in some demonstrable way to the alleged constitutional deprivation," *Palmer*, 327 F.3d at 594, or if the "conduct causing the constitutional deprivation" occurred at his "direction or with [his] knowledge and consent," *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (internal quotation marks omitted).

The second amended complaint alleges that "Maurer, Lonergran, *or* O'Connor were or are involved in the decision-making process for every disciplinary action against an Aviation Police Officer." Doc. 71, ¶ 36 (emphasis added). Defendants contend that Plaintiffs' use of a disjunctive construction ("or" instead of "and") means they have not sufficiently tied the three individuals to the alleged violations. In support, Defendants cite *Brooks v. Ross*, 2008 WL 5082995, at *7 (N.D. Ill. Nov. 25, 2008), which dismissed a § 1983 claim where the plaintiff "alleg[ed] constitutional deprivations by 'one or more of the Defendants.'" This case is

distinguishable.  Plaintiffs did not allege misconduct by "one or more of the Defendants" writ large, but instead focused on the three highest ranking defendants in the DOA public safety apparatus.  Moreover, other allegations focus on those specific defendants, either individually or as a group.  *See*, *e.g.*, Doc. 71, ¶¶ 67 (O'Connor), 69 (Maurer), 101 (Maurer), 133 (Maurer and "O'Connor or … Lonergran"), 134 (Lonergran).  Drawing all inferences in Plaintiffs' favor, as required at this juncture, the second amended complaint sufficiently ties Maurer, O'Connor, and Lonergran to the alleged §§ 1981 and 1983 violations.  *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (officials who purportedly caused false disciplinary charges to be brought were personally involved); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (official was personally involved where he "knew of the actions of his subordinates which resulted in a constitutional violation" and "failed to take any preventative action").  At the summary judgment stage, Plaintiffs will be required to adduce evidence demonstrating the personal involvement of those three Defendants.

### C.     "Scope of the Charge" Exhaustion Issues

A plaintiff generally cannot bring a claim in a Title VII or IHRA lawsuit that was not previously alleged in an Equal Employment Opportunities Commission ("EEOC") or IDHR administrative charge.  *See Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985); *Kalush v. Ill. Dep't of Human Rights Chief Legal Counsel*, 700 N.E.2d 132, 140 (Ill. App. 1998); *see also Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687-88 (Ill. 1989) (adopting Title VII framework for IHRA cases).  This exhaustion rule "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved.

… For allowing the complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (internal citations omitted).

Although the factual basis for a discrimination claim in federal court must previously have been presented in an administrative charge, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Ibid.*; *see also Laye v. Am. Drug Stores, Inc.*, 2000 WL 656677, at *4 (N.D. Ill. Mar. 22, 2000) (same for IDHR charge). Instead, the court asks whether the federal claims are "like or reasonably related to the allegations of the [EEOC or IDHR] charge and growing out of such allegations" or, put another way, whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC [or IDHR] investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500 (internal quotation marks omitted); *see also Laye*, 2000 WL 656677, at *4 (same for IDHR charge); *Northtown Ford v. Ill. Human Rights Comm'n*, 525 N.E.2d 1215, 1220 (Ill. App. 1988) (same). Simple or general allegations of discrimination in an EEOC or IDHR charge are not a sufficient predicate for bringing any discrimination theory in federal court. *See Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct*

and implicate the *same individuals*."); *see also Ross v. Ed Napleton Honda, Inc.*, 2005 WL 38742, at *2 (N.D. Ill. Jan. 7, 2005) (same for IDHR charge).

McQueen filed an administrative charge with the EEOC, and the other Plaintiffs filed with the IDHR. (The agencies have a work sharing arrangement providing that a charge filed with one is deemed cross-filed with the other. *See Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552, 554 (7th Cir. 1991).) Defendants contend that several of Plaintiffs' individual Title VII and IHRA claims in this case, as well as the collective disparate impact claims, fall outside the scope of their administrative charges and therefore may not be pursued here. Contrary to Plaintiffs' submission, "scope of the charge" challenges are appropriate at the motion to dismiss stage. *See Leskovec v. Circuit Works Corp.*, 2008 WL 5236006, at *2 (N.D. Ill. Dec. 15, 2008) ("Although failure to exhaust administrative remedies is an affirmative defense, when a plaintiff pleads facts showing that his claim is barred by that defense, it is appropriate to address it in the context of a motion to dismiss. In this case, … [t]he EEOC charge does not contain [the] discrimination claims pursuant to Title VII … that Leskovec now alleges in the complaint. … Therefore, the discrimination claims brought under Title VII … will be dismissed."). Defendants' contentions, therefore, are considered on the merits.

### 1. Shumaker

Shumaker advanced two allegations in her administrative charge: (1) non-party Arthur Angeloupoulos suspended her on November 14, 2008, for leaving her work area; and (2) non-party Annette Shipps issued her a disciplinary warning on January 15, 2009, for breaching airport security. *See* Doc. 96-2 at 2-6. The charge alleged that both actions were motivated by her race, sex, and disability, and that Shipps issued the disciplinary warning only after Shumaker complained to Maurer about sex discrimination on January 5, 2009. In the second amended

-12-

complaint, Shumaker alleges discrimination on several other occasions in the form of petty harassments, denial of promotions, undesirable job assignments, not being allowed to return to work after medical leave, being banned from using DOA vehicles, and being subjected to retaliation for reporting non-African-American employees who left their work assignments. *See* Doc. 71, ¶¶ 17, 82, 86, 98-100, 105, 157, 164.

Defendants contend that Shumaker's IHRA and Title VII claims (Counts XIX-XXII, ¶¶ 280-303) must be cabined to the instances of discrimination alleged in her administrative charge. They are correct. Although Shumaker need not have drafted her IDHR charge with legal precision, she was required to set forth the full extent of her discriminatory injuries. This is so even if, as Shumaker maintains, an administrative investigation might have uncovered discriminatory conduct not set forth in the charge. In *Geldon v. South Milwaukee School District*, 414 F.3d 817 (7th Cir. 2005), the plaintiff filed an EEOC charge alleging discrimination concerning a particular job application. *Id*. at 819. That charge, the Seventh Circuit explained, did not properly exhaust administrative remedies for a subsequent claim, raised for the first time in federal court, that the same employer subjected a *second* job application to similar discrimination. *Ibid*. The court noted that even if the second application was rejected due to similar discrimination and could have been discovered in the course of the EEOC's investigation, the claim based on the second application must be dismissed because the administrative charge gave notice only of the first instance of discrimination. *Ibid*. Here, as in *Geldon*, Shumaker did not put the IDHR or Defendants on notice of any allegedly discriminatory conduct other than the November 2008 and January 2009 incidents. Her federal claims must be limited to those instances.

### 2.     Russell

Russell's administrative charge alleges that between May 11, 2008, and July 26, 2008, Kenneth Johnson, a non-party to this suit, refused to speak with her, prevented her from taking lunch breaks, and ultimately suspended her because of her race and sex.  *See* Doc. 96-2, at 8-10. The second amended complaint advances several other allegations of discrimination.  *See* Doc. 71, ¶¶ 80, 85, 88, 98, 101.  As with Shumaker, Russell's administrative charge does not fairly encompass these various claims of discrimination.  Her Title VII and IHRA claims (Counts XXIII-XXIV, ¶¶ 304-315) therefore are limited to the claims brought in her administrative charge.

### 3.     Dancy

Dancy filed five relevant administrative charges, which alleged that (1) Fitzgerald suspended her on June 24, 2008, in retaliation for filing an IDHR race discrimination charge and for participating in an internal sexual harassment investigation; (2) she was harassed on July 22-23, 2008, in retaliation for filing another IDHR race discrimination charge and for participating in the sexual harassment investigation; (3) between October 2008 and January 2009, she was harassed on the basis of race and in retaliation for filing IDHR charges; (4) she was suspended by non-party Annette Shipps on April 14, 2009, for filing IDHR charges alleging race discrimination; (5) she was not afforded promotion or training opportunities in January 2007 and November 2007 because of race and in retaliation for her participation in the sexual harassment investigation; and (6) she was removed from her permanent assignment because of race and in retaliation for filing other IDHR charges.  *See* Doc. 96-1, at 62-75.  These charges are nearly identical to Dancy's claims in the second amended complaint, with the exception of two newly alleged claims—a claim that she was reprimanded for reporting a non-African-American

employee who left his work area, and a claim that she was improperly reprimanded for catching a baggage thief. *See* Doc. 71, ¶ 65-66. Accordingly, Dancy's Title VII and IHRA claims (Counts VI-IX, ¶¶ 180-209) are dismissed only to the extent they involve these two claims.

### 4. McQueen

McQueen's administrative charge alleged that (1) he was denied accommodation in violation of the ADA; (2) he was retaliated against in the form of unwarranted discipline and undesirable work assignments; and (3) he was discriminated against on the basis of his race. *See* Doc. 96-2, at 12-13. McQueen supported these claims of discrimination with pattern-or-practice allegations against DOA. *See id*. at 13. Defendants seek to dismiss McQueen's Title VII and IHRA claims (Counts X-XI and XIV-XVI, ¶¶ 210-226 and 247-261) on the grounds that his administrative charge did not name the individual supervisors responsible for the alleged violations and does not indicate what adverse actions were taken against him. (Defendants make a similar argument regarding Dancy.)

Although a defendant may be dismissed if she is not named in the relevant administrative charge, *see Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600 (7th Cir. 2001), McQueen is pursuing his Title VII and IHRA claims against the City of Chicago, which was named in McQueen's charge. The factual allegations in that charge, moreover, are nearly identical to McQueen's allegations in this suit. *See* Doc. 71, ¶¶ 61, 81, 87, 104, 130, 134. Although the charge did not name the individual perpetrators of these acts, it did state that his "chain of command," including supervisory Sergeants and Lieutenants, discriminated against him in the relevant manners. *See* Doc. 96-2 at 13. This provided the City "with adequate notice of the charge, under circumstances where it has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance," *Schnellbaecher v. Baskin Clothing*

*Co.*, 887 F.2d 124, 126-27 (7th Cir. 1989), and describes the same conduct and

individuals—even if unnamed—as those described in the second amended complaint, *see Dear*

*v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009) (plaintiff adequately described the same

individuals when her EEOC charge and complaint both referenced "Department staff").

McQueen therefore exhausted all of the Title VII and IHRA claims advanced on his behalf in the

second amended complaint.

### 5. Disparate Impact Claims

An employer is liable under a disparate impact theory where a facially neutral

employment practice disproportionately impacts members of a legally protected group. *See*

*Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336, 1340 (7th Cir. 1992) (citing *Dothard v.*

*Rawlinson*, 433 U.S. 321, 329 (1977)). Title VII prohibits "employment practices that are

facially neutral in their treatment of different groups but that in fact fall more harshly on one

group than another and cannot be justified by business necessity." *O'Regan v. Arbitration*

*Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001) (citations omitted). Defendants seek dismissal

of Plaintiffs' Title VII and IHRA disparate impact claims (Counts XVII-XVIII, ¶¶ 267-279) on

two "scope of the charge" grounds.

First, Defendants seek to dismiss Dancy, Shumaker, and Russell from Counts XVII and

XVIII on the ground that McQueen is the only Plaintiff who included a disparate impact claim in

his administrative charge. Acknowledging that Dancy, Shumaker, and Russell failed to include

disparate impact claims in their charges, Plaintiffs invoke the "single-filing" or "piggybacking"

doctrine, a judge-made exception to Title VII and IHRA exhaustion requirements. Doc. 71,

¶ 216. The doctrine provides that if "the would-be intervener's claim arises out of the same or

similar discriminatory conduct, committed in the same period, as the claim in the suit in which

he wants to intervene, his failure to file a timely charge will be disregarded." *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003). To benefit from the exception, Dancy, Shumaker, and Russell must establish that: (1) McQueen exhausted his administrative remedies and noted the collective nature of the disparate impact claim in his EEOC charge, *see Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016-17 (7th Cir. 1988); (2) Dancy, Shumaker, and Russell did not file a timely EEOC charge, *see Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564-65 (2d Cir. 2006); *Flemming v. United Parcel Serv.*, 2004 WL 2314962, at *2 (N.D. Ill. Oct. 12, 2004); and (3) they suffered similar discriminatory conduct during the same period, *see Horton*, 343 F.3d at 899.

Although Dancy, Shumaker, and Russell arguably satisfy the first and third prongs, they plainly fail the second. All three individuals timely filed their own administrative charges, and in this lawsuit are pressing claims brought in those charges. It follows that Dancy, Shumaker, and Russell may not rely on McQueen's charge or *any* of its claims, including the disparate impact claim, in an effort to satisfy the exhaustion requirement. *See Holowecki*, 440 F.3d at 564-65 ("allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charge of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation"); *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997) ("such a plaintiff should be required to rely upon his or her own … charge, and cannot reasonably rely upon [an]other claimant's charge"); *Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995) ("once they file separate administrative charges, they cannot rely any further on the other claimant's actions and must timely file suit after receiving their right-to-sue letters"); *Flemming*, 2004 WL 2314962, at *2 (single-filing rule "implies that a plaintiff who does receive a right-to-

sue letter may not enjoy the benefit of piggy-backing"); *see also Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001) ("The single-file rule allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff.").

Second, Defendants argue that McQueen's disparate impact claim should be limited to the facially neutral policy identified in his EEOC charge—the City's policy of "granting discretion to Sergeants and Lieutenants without sufficient oversight from human resources." Doc. 96-2 at 13. The second amended complaint rests the disparate impact claim on at least two facially neutral DOA policies: the policy identified in McQueen's charge, and the City's policy of not promoting individuals with a recent history of discipline. *See* Doc. 71, ¶ 272. The second policy is not identified in McQueen's charge; the charge describes non-promotion only in the context of *intentional* discrimination against McQueen and other African Americans, and does not mention any department-wide promotion policy, let alone a policy of examining an employee's recent disciplinary history when making promotion decisions. Where an administrative charge fails to identify or describe the neutral employment practice later alleged to disproportionately affect a protected group, that policy cannot support a disparate impact claim. *See Remien v. EMC Corp.*, 2008 WL 821887, at *5 (N.D. Ill. Mar. 26, 2008) (EEOC charge must identify the "facially neutral policy or policies [that] resulted in unintended but adverse consequences to protected class"); *Bennett v. Schmidt*, 2000 WL 1161073, at *6-7 (N.D. Ill. July 14, 2000) (plaintiff cannot name one neutral policy in her administrative charge and advance a second policy, not mentioned in the charge, in her complaint).

Accordingly, only McQueen can proceed with a disparate impact claim, and that claim may proceed only to the extent it relies on the City's alleged policy of granting excessive discretion to DOA Sergeants and Lieutenants.

**D.      Substantive Challenge to Disparate Impact Claims**

Defendants seek to dismiss all three disparate impact claims—not only Counts XVII (Title VII) and XVIII (IHRA), but also Count XXV (ICRA)—for failure to state a claim. Defendants' premise is that a complaint, to state disparate impact claim, must allege percentages, statistics, or data demonstrating the disproportionate effect of facially neutral employment policies on a protected group, something Plaintiffs' second amended complaint does not do. Doc. 96 at 23.  That is wrong.  A Title VII disparate impact claim need not allege statistical support to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting that Supreme Court "has never indicated that the requirements for establishing a prima facie case under [Title VII] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *id*. at 512 ("under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case"); *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) ("A Title VII plaintiff need not set forth allegations of a prima facie case in the complaint."); *Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."); *Emiabata v. Marten Transp., Ltd.*, 574 F. Supp. 2d 912, 917 (W.D. Wis. 2007); *O'Neill v. Gourmet Sys. of Minn., Inc.*, 219 F.R.D. 445, 456 (W.D. Wis. 2002); *Mata v. Ill. State Police*, 2001 WL 292804, at *4 (N.D. Ill. Mar. 22, 2001) (at the motion to dismiss stage, "there is no reason [a plaintiff] would have this kind of statistical evidence yet").  The same holds

under the IHRA and ICRA.  *See Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (ICRA "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon") (citing *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 856 N.E.2d 460, 467 (Ill. App. 2006)); *Interstate Material Corp. v. Ill Human Rights Comm'n*, 654 N.E.2d 713, 718 (Ill. App. 1995) (same for IHRA).

To survive a motion to dismiss, a complaint must identify a specific employment practice, allege its causation of the disparate impact, and give Defendants fair notice of the claim.  Here, the second amended complaint identifies the specific employment practices allegedly creating a disparate impact: the policy of giving Sergeants and Lieutenants overbroad, unchecked discretion and, for purposes of the ICRA claim, the policy of not considering for promotion individuals with recent disciplinary records.  The second amended complaint also alleges that Plaintiffs and their African-American colleagues were penalized or passed over in large numbers as a result of the policies, an experience not shared by other employees.  Taken together, and drawing all inferences in Plaintiffs' favor, the second amended complaint has adequately alleged that specific DOA polices have had a disparate impact on African Americans.  Nothing more is required at this stage.

**E.    Count V**

Defendants submit that Count V is so vague that it fails to put Defendants on notice of the claim.  Count V charges that the Defendants deprived each Plaintiff of his or her federally protected rights under the "Equal Protection Clause and/or Due Process Clause of the Fourteenth Amendment and/or the [Civil Rights Act] of 1866, Sections 1981."  Doc. 71 at 32.  Defendants maintain that Rule 10(b) prohibits Plaintiffs from pursuing multiple causes of action in Count V.  That is wrong.  As the Seventh Circuit has explained, "[i]dentifying legal theories may assist

defendants and the court is seeing how the plaintiff hopes to prevail, but … [p]utting each legal theory in a separate count is a throwback to code pleading." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992); *see also Bartholet*, 953 F.2d at 1078 ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this.").

### Conclusion

For the foregoing reasons, Defendants' partial motions to dismiss the second amended complaint are granted in part—as to the portions of the individual Title VII and IHRA claims referenced above; as to the Title VII and IHRA disparate impact claims brought on behalf of Russell, Shumaker, and Dancy; and as to McQueen's disparate impact claims based on any policy other than the City's policy of granting discretion to Sergeants and Lieutenants without sufficient oversight from human resources—and are denied in all other respects. Defendants shall answer the second amended complaint by April 13, 2011.

March 23, 2011
_____
United States District Judge