UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK McQUEEN, GAIL RUSSELL, MICHELLE SHUMAKER, and SHARON DANCY, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF CHICAGO, a municipal corporation, and JOSEPH O'CONNOR, MICHAEL FITZGERALD, RAYMOND JUBERA, and LOUIS MILLS, in their individual and official capacities. <br><br> Defendants. | 09 C 2048 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Patrick McQueen, Gail Russell, Michelle Shumaker, and Sharon Dancy, aviation police officers employed by the City of Chicago's Department of Aviation ("DOA"), brought this suit against several DOA supervisors and the City. The operative complaint alleges violations of 42 U.S.C. § 1981, the Fourteenth Amendment's equal protection and due process clauses, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq.*, and the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/1 *et seq.* Doc. 71. The named defendants are the City; James Maurer, the former DOA Managing Deputy Commissioner of Security and Public Safety; Joseph O'Conner and Bill Lonergran, both Assistants to the DOA Deputy Commissioner for Security and Public Safety; and Michael Fitzgerald, Raymond Jubera, and Louis Mills, all DOA Lieutenants. In an earlier opinion, the court dismissed certain claims and allowed the others to

proceed. Docs. 123-124 (reported at 803 F. Supp. 2d 892 (N.D. Ill. Mar. 23, 2011)). The claims against Maurer and Lonergran later were dismissed by stipulation. Docs. 180-181, 190-191.

The remaining defendants have moved for summary judgment. Doc. 192. The motion (which does not argue for qualified immunity) is denied in its entirety, except as set forth below. This opinion assumes familiarity with the court's earlier opinion. The material facts are set forth as favorably to Plaintiffs as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

## Discussion

**I.    Section 1981 Claims**

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that 42 U.S.C. § 1983 provides "the exclusive federal remedy" for alleged § 1981 violations by state actors. *Id*. at 731-33. As the court noted in its earlier opinion, 803 F. Supp. 2d at 900, whether that holding from *Jett* survived the Civil Rights Act of 1991 is an open question in the Seventh Circuit. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 n.3 (7th Cir. 2012) (finding it unnecessary to resolve the question). Defendants again press *Jett* on summary judgment. Doc. 193 at 65-66. The court concludes that the majority view among the circuits, which holds that the Civil Rights Act of 1991 did not abrogate *Jett*, has the better of the argument. *See McCormick v. Miami Univ.*, 693 F.3d 654, 659-61 (6th Cir. 2012); *McGovern v. City of Philadelphia*, 554 F.3d 114, 117-21 (3d Cir. 2009); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463-64 (5th Cir. 2001); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893-94 (11th Cir. 2000); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998); *Dennis v. Cnty. of Fairfax*, 55

F.3d 151, 156 (4th Cir. 1995); *contra Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207-14 (9th Cir. 1996).

The significance of this ruling is limited. *Jett* did not extinguish § 1981 claims against state actors; rather, it held that such claims must proceed through the vehicle provided by § 1983. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1134 (10th Cir. 2006). Plaintiffs' § 1981 claims therefore are not dismissed; rather that proceeding directly under § 1981, they must proceed, like the equal protection and due process claims, under § 1983. It follows that the § 1981 claims are subject to a two-year statute of limitations—which does not appear to have any practical significance in this case, as neither side has noted the distinction between the two-year limitations period under § 1983 and the four-year limitations period that ordinarily governs some claims under § 1981—and Plaintiffs must satisfy *Monell* to hold the City liable for violating § 1981. *See Jett*, 491 U.S. at 731-32; *Hall v. Vill. of Flossmoor*, 520 F. App'x 468, 473 (7th Cir. 2013); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999).

## II. Section 1983 Claims

### A. Claims Regarding Post Assignments

To prevail on their § 1983 claims, Plaintiffs must demonstrate that they suffered a "materially adverse employment action." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013). Among other alleged adverse employment actions, Plaintiffs allege that Defendants disproportionately assigned them to undesirable posts as compared to their non-African-American colleagues. DOA officers at O'Hare Airport could be assigned to any of fourteen fixed posts, eight foot patrols, and several vehicle assignments. Doc. 230 at ¶ 14. According to Plaintiffs, six of the fixed posts are "unfavorable." *Id*. at ¶ 17. They say that Post 1 "is the least desirable" because "it is very busy and many officers are hurt there from being hit by

3

cars," requires officers to check cars in inclement weather, and contains dust from "limestone … being crushed." *Id*. at ¶¶ 17-18. Another example is Post 2, which Plaintiffs say is "an unfavorable position because it's filthy, broken down, has rodents, … has a high volume of traffic," and exposes officers to fumes. *Id*. at ¶ 19. Post 12 is situated in a construction area with "all types of dirt, rocks, and porta-potties." *Ibid*.

Defendants contend that the allegedly discriminatory post assignments do not qualify as a materially adverse employment action. Doc. 198 at 13-17. The Seventh Circuit has held that there are three types of materially adverse employment actions:

> (1) cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated; (2) cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced; and (3) cases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the conditions in which he works are changed in a way that subjects him to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet.

*Tart v. Ill. Power Co.,* 366 F.3d 461, 475 (7th Cir. 2004) (alteration in original) (internal quotation marks and brackets omitted). Discriminatory post assignments could conceivably fall only within the third category.

The post assignments of which Plaintiffs complain do not rise to the level of a materially adverse employment action. While the posts described above were considered "the most non-desirable" by many officers, some officers actually preferred them. Doc. 212 at ¶¶ 16-17 (one African American officer "wanted to work at Posts 1 and 2 because at other posts, he would get bored"). This necessarily means that the post assignments of which Plaintiffs complain were

neither intolerable nor a "significantly negative alteration in [the Plaintiffs'] workplace environment." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012); *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities."); *Johnson v. Cambridge*, 325 F.3d 892, 901 (7th Cir. 2003) (holding that "Johnson's allegation that he was given harder work assignments" does not amount to a materially adverse employment action); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691-92 (7th Cir. 2001) (holding that female custodians' complaints that they received "additional responsibilities," received no help from others, and were "intentionally interfered with" while working were not materially adverse actions). It follows that those assignments were not materially adverse employment actions. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007) ("The plaintiffs here argued only that they preferred the work at the Edwardsville campus, and that claim is contradicted by three of the four plaintiffs' specific or contingent requests to work at the very location they purport to disdain. … This indicates that the plaintiffs' complaints involved purely subjective preference for one assignment over another."); *O'Neal v. City of Chicago*, 392 F.3d 909, 910-13 (7th Cir. 2004) (holding that transferring an officer from the narcotics unit to beat sergeant, which decreased his opportunities for overtime pay, supervisory responsibilities, and other perks, was not a materially adverse employment action because "complaints about the transfer reveal only a purely subjective preference for one position over another, which does not justify trundling out the heavy artillery of federal antidiscrimination law") (internal quotation marks omitted).

For these reasons, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims to the extent they rest on allegedly discriminatory post assignments. The impact of this

holding on the scope of Plaintiffs' other claims will be addressed at the pretrial conference. *See Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010) ("The same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983."); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (holding that the ADA requires that the plaintiff have suffered an adverse employment action); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) ("In analyzing employment discrimination actions brought under the [IHRA], the [Illinois Human Rights] Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII of the Civil Rights Act of 1964. … This court will follow the same approach."); *Marshall v. Family Dollar Stores, Inc.*, 2012 WL 1117897, at *2 (N.D. Ill. Apr. 3, 2012) ("Illinois courts apply the same standard to IHRA retaliation claims that federal courts apply to Title VII retaliation claims.") (citing cases). The issue is resolved definitively on summary judgment as to the § 1983 claims because, as shown below, it will result in the complete dismissal of Jubera as a party defendant.

B. **Section 1983 Claims Against Jubera**

A "plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (internal quotation marks and citation omitted); *see also Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). Moreover, "a supervisor is not liable for the acts of her subordinates under § 1983 unless she was aware of and approved her employees' conduct." *Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007). No evidence in the summary judgment record would allow a reasonable jury to

find that Jubera was personally involved in any materially adverse employment action against any plaintiff.

First, McQueen asserts when he "stopped receiv[ing] overtime," he "asked … Lt. Jubera … why he was not allowed to receive overtime" and "would ask [Jubera] on at least a monthly basis if there were any shifts or overtime he could work." Doc. 230 at ¶ 137. But Plaintiffs admit that it was other supervisors who told McQueen that he would not get overtime, *ibid*., and McQueen adduces no evidence that Jubera was personally involved in a decision to deny him overtime. Jubera merely fielded McQueen's inquiries, which is insufficient to support liability under § 1983. *See Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982) ("the fact that Crowder informed [the defendant] both personally and by letter [of the adverse action]" does not mean that defendant had personal involvement in the adverse action) (internal quotation marks omitted); *Carter v. Howard*, 2007 WL 2566257, at *6 (C.D. Ill. July 10, 2007) ("A plaintiff's allegations that he informed the defendant personally and by letter of the claimed constitutional violations do not constitute personal involvement sufficient to assert liability under § 1983.").

Second, McQueen asserts that Jubera "allows his 'crew,' which … is comprised of Hispanic officers, to show up late for work without discipline and to show up for work intoxicated." Doc. 212 at ¶ 62. Dancy likewise asserts that Jubera allowed non-African-Americans to be tardy. *Id*. at ¶ 130. But there is no evidence that Jubera was personally involved in disciplining McQueen or Dancy. *Id*. at ¶¶ 31-43. Jubera's failure to discipline others does not qualify as an adverse employment action against McQueen and Dancy. *See Ajayi v. Aramark Business Servs., Inc.*, 336 F.3d 520, 529 (7th Cir. 2003) ("Ramiro's authorization of overtime for a Hispanic employee, and … Ramiro's failure to discipline Lourdes … were nonactionable because they had no tangible, negative impact on Ajayi's employment").

Finally, Shumaker asserts that she "was denied the opportunity [by Jubera] to go to training to carry a state ticket book to write state tickets." Doc. 230 at ¶ 116; *see also* Doc. 212 at ¶ 89. To qualify as a materially adverse employment action, a failure to train must affect the terms and conditions of the plaintiff's employment. *See Chaib v. Indiana*, 744 F.3d 974, 983 (7th Cir. 2014) ("Thus, even if the employer somehow gained notice of Chaib's lack of training—and the record is silent on when or if that happened—the issue was remedied and Chaib failed to provide any evidence that any delay between that notice and the receipt of training caused any change in the terms or conditions of her employment."); *Johnson v. Siemens Bldg. Tech., Inc.*, 273 F. App'x 543, 547-48 (7th Cir. 2008) (holding that an alleged failure to train did not affect the terms and conditions of the plaintiff's employment, where he "worked in the domestic traffic department, but wanted formal training in international shipping because he thought that the international department paid more, and that the training might improve his chances of becoming an international traffic coordinator," but "nothing in the record suggests that members of the international traffic unit were better compensated").

Nothing in the record suggests that Shumaker's failure to obtain ticket training affected her terms and conditions of employment. Plaintiffs' Local Rule 56.1(b)(3)(C) statement asserts that the "[d]enial of … training affected Plaintiffs' opportunity for advancement." Doc. 230 at ¶ 117. But as Defendants correctly respond, the deposition excerpts cited by Plaintiffs does not support that statement. In the first excerpt, Shumaker testified that her lack of driving assignments prevented her from adequately answering a question during an interview for a promotion; no explanation is given as to how ticket training would have assisted her in answering that question. Doc. 194-3 at 50. In the second set of excerpts, Defendants' Rule 30(b)(6) witness answered certain questions about the interview process; again, ticket training is

not mentioned. Doc. 194-14 at 12, 17, 19. Accordingly, Plaintiffs have failed to show how the failure to provide ticket training affected the terms and conditions of Shumaker's employment, and without that showing, they have failed to establish that this qualifies as a materially adverse employment action.

**III.     Title VII, ICRA, and IHRA Disparate Impact Claims**

Defendants seek summary judgment on the Title VII, ICRA, and IHRA disparate impact claims. Doc. 198 at 66-67. Title VII prohibits "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988); *see also Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336, 1340 (7th Cir. 1992) (citing *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977)). The same is true under the ICRA and the IHRA. *See Peyton v. Dep't of Human Rights*, 700 N.E.2d 451, 456-57 (Ill. App. 1998) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)) (holding that a disparate impact claim under the IHRA "involves proof of employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity"); *Illinois Native Am. Bar Ass'n v. Univ. of Illinois by Its Bd. of Trustees*, 856 N.E.2d 460, 467 (2006) (holding that the ICRA provides for disparate impact claims identical to those that were available under federal law). Defendants correctly argue Plaintiffs' disparate impact claims fail because they have not adduced any evidence of causation.

To prove a Title VII disparate impact claim, "the plaintiff must … demonstrate causation by offering statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [disparate impact] because of their membership in a protected group."

*Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) (internal quotation marks omitted); *see also Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988) ("Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."); *Bennett v. Roberts,* 295 F.3d 687, 698 (7th Cir. 2002) (same); *Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 513 (7th Cir. 1996) (same). The same holds under the ICRA and the IHRA. *See Ill. Native Am. Bar Ass'n*, 856 N.E.2d at 467 (holding that the ICRA was enacted to provide for a disparate impact claim identical to that developed under federal law); *Bd. of Trs. of S. Ill. Univ. v. Knight*, 516 N.E.2d 991, 995 (Ill. App. 1987) ("[i]n analyzing claims of discrimination under the [IHRA], Illinois courts have looked to the standards applicable to federal claims brought under Title VII"); *Pioneer Life Ins. Co. of Illinois v. Woodard*, 504 N.E.2d 230, 234 (Ill. App. 1987) (same); *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (holding that *Illinois Native American Bar Association* "provides chapter and verse for the proposition that the [ICRA] was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon").

Plaintiffs admit that they have no statistical evidence showing that the DOA's facially neutral policy had a disparate impact on African-Americans, but argue that no such evidence is necessary. As the above-cited authorities demonstrate, Plaintiffs are incorrect. Plaintiffs' failure to adduce statistical evidence of a disparate impact dooms their disparate impact claims. *See Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 259 (7th Cir. 1996) (noting that the plaintiff's claim would fail because "a disparate impact theory of discrimination [under Title VII] requires the plaintiff to put forth statistical evidence … that the challenged employment practice has a

disproportionately negative effect"); *Adams v. Lucent Technologies, Inc.*, 284 F. App'x 296, 304 (6th Cir. 2008) (holding that the plaintiff's "complete failure to make any such statistical showing [of causation] is fatal to [the disparate impact] claim") (internal quotation marks omitted). The court acknowledges Plaintiffs' assertion that Defendants failed to produce discovery that would have allowed Plaintiffs to make a statistical showing. Doc. 217 at 45. But because Plaintiffs never moved to compel that discovery, they cannot now use Defendants' alleged production failures to forestall summary judgment. *See Jungiewicz v. Allstate Ins. Co.*, 2014 WL 1292121, at *1 (N.D. Ill. Mar. 31, 2014) (refusing to draw an adverse inference on summary judgment where the plaintiff argued that the defendant had withheld certain evidence, reasoning that the plaintiff "failed to pursue any motion to compel the production of such evidence").

## IV. McQueen's FMLA Interference Claim

The FMLA entitles employees to twelve workweeks of unpaid leave where a serious health condition renders an employee unable to perform his job. *See* 29 U.S.C. § 2612(a)(1)(D), (b)(1). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1); *see Scruggs v. Carrier Corp*, 688 F.3d 821, 825 (7th Cir. 2012). McQueen and Shumaker allege FMLA interference claims, and Defendants seek summary judgment on those claims. Doc. 198 at 30-33, 49-50. To survive summary judgment, McQueen and Shumaker must show that: "(1) [they were] eligible for the FMLA protections; (2) [their] employer was covered by FMLA; (3) [they were] entitled to take leave under [the] FMLA; (4) [they] provided sufficient notice of [their] intent to take leave; and (5) [their] employer denied [them] FMLA benefits to which [they were] entitled." *James v. Hyatt Regency Chi.,* 707

F.3d 775, 780 (7th Cir. 2013) (internal quotation marks omitted); *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012); *Markowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011). McQueen's claim does not survive summary judgment.

McQueen asserts two FMLA interference violations. First, he contends that he was disciplined for missing work on two days—August 8, 2008, and February 2, 2009—on which he was entitled to FMLA leave. However, McQueen admits he never informed the DOA that the August 8 absence was covered by the FMLA; he attributes this failure to "[being] in the emergency room or if I'm in the middle of an asthma attack." Doc. 230 at ¶ 106; Doc. 194-2 at 30, 36. Although FMLA regulations account for circumstances where an FMLA absence is unforeseeable, they nevertheless state "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *see Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008-09 (7th Cir. 2001). McQueen adduces no evidence that he ever provided such notice, and he therefore cannot use the August 8 absence as a basis for his FMLA interference claim. *See Collins*, 272 F.3d at 1008-09 (holding that while FMLA regulations allow for a delay in notice, the regulations do not say that the employee "need not *ever* let the employer know that the medical condition is 'serious'").

With respect to absence on February 2, 2009, McQueen "had a doctor's note stating that it is very possible McQueen's oversleeping was due to his depression medication." Doc. 230 at ¶ 106. McQueen does not suggest he even provided the doctor's note to the DOA, which means that he cannot pursue an FMLA interference claim based on that absence. *See Collins*, 272 F.3d at 1008-09.

The note was insufficient in any event. As a general rule, an "employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an

FMLA-qualifying condition." *Burnett v. LFW Inc.*, 472 F.3d 471, 478-79 (7th Cir. 2006) ("[T]he employee's duty is merely to place the employer on notice of a *probable* basis for FMLA leave.") (emphasis added); *see also Collins*, 272 F.3d at 1008 ("[E]mployers … are entitled to the sort of notice that will inform them … that the FMLA *may* apply.") (emphasis added). However, where an employee "seeks leave due to a qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.303(c). That more stringent standard applies here because McQueen had already received FMLA leave under 29 U.S.C. § 2612(a)(1)(D). Doc. 212 at ¶ 63. Under that standard, the doctor's note is insufficient because it neither states the need for FMLA leave nor references the qualifying reason for the leave.

Second, McQueen argues the Defendants interfered with his FMLA rights by disciplining him for taking FMLA leave. Doc. 217 at 49. Because the FMLA entitles an employee who takes leave "to be restored" to the same or an equivalent position upon his return, 29 U.S.C. § 2614(a)(1), "[f]iring an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights." *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009). Moreover, "wait[ing] until the employee took leave to fire her for problems of which the employer was already aware" may permit an inference that the employer fired the employee because she took leave. *Id*. at 714; *see also Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) ("We can imagine circumstances in which the timing of this decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took

leave, and the supervisor based the firing on the incidents of which the employer had already been aware)."). McQueen offers no proof that he was disciplined for taking FMLA leave. He was reinstated each time he took leave, Doc. 212 at ¶¶ 63-64, and the portion of his Local Rule 56.1(b)(3)(C) statement he cites for the proposition that he was disciplined makes no mention of discipline, Doc. 217 at 49 (citing Doc. 230 at ¶ 106).

## V. Shumaker's FMLA Retaliation Claim

Defendants seek summary judgment on Shumaker's FMLA retaliation claim. Doc. 198 at 50. Plaintiffs' response brief defends McQueen's FMLA retaliation and interference claims and Shumaker's FMLA interference claim, but not Shumaker's FMLA retaliation claim. Doc. 217 at 49-50. By failing to defend that claim, Plaintiffs forfeited it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to Cracker Barrel's motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008); *Witte v. Wis. Dep't of Corr.,* 434 F.3d 1031, 1038 (7th Cir. 2006) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.").

## VI. Title VII Sex Discrimination Claims by Shumaker, Russell, and Dancy

Defendants seek summary judgment on the Title VII sex discrimination claims brought by Shumaker, Russell, and Darcy. Doc. 198 at 41, 51, 57. Plaintiffs' response brief does not defend the sex discrimination claims. Doc. 217. Those claims accordingly are forfeited. *See Bonte*, 624 F.3d at 466; *Humphries*, 474 F.3d at 407; *Witte*, 434 F.3d at 1038.

14

**Conclusion**

For the foregoing reasons, the Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted to Jubera on the § 1983 claims against him, and because no other claims are brought against him, he is dismissed as a party defendant. Summary judgment also is granted to Defendants on the § 1983 claims to the extent they allege discriminatory post assignments; the Title VII, ICRA, and IHRA disparate impact claims; McQueen's FMLA interference claim; Shumaker's FMLA retaliation claim; and the Title VII sex discrimination claims. The § 1981 claims may proceed to trial, but only through the vehicle provided by § 1983. The summary judgment motion otherwise is denied.

April 30, 2014

United States District Judge